UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CESSNA FINANCE CORPORATION,

    Petitioner,

-against-

AL GHAITH HOLDING COMPANY PJSC,

    Respondent.

---

**ORDER**

15 Civ. 9857 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

    Petitioner Cessna Finance Corporation seeks confirmation of an October 26, 2015 arbitration award (the "Award") against Respondent Al Ghaith Holding Company PJSC. Respondent cross-moves to vacate the Award on the ground that the arbitrators manifestly disregarded the law. For the reasons set forth below, Petitioner's motion to confirm the Award will be granted, and Respondent's cross-motion to vacate the Award will be denied.

## BACKGROUND

    Petitioner is a Kansas corporation "engaged in the business of leasing and financing the leasing of aircraft." (Allegaert Decl., Ex. A (Dkt. No. 4-1) (Award) at 7)[1] Respondent is a private joint stock company organized under United Arab Emirates law, and "is a holding company with interests in industrial assets, oil and gas, real estate, and hotels." (Id.) The Award arises out of a contract dispute concerning aircraft lease agreements between Petitioner and a third party, Prestige Jet Rental LLC, and guaranty agreements for those leases between Petitioner and Respondent. (Id. at 9)

---

[1] All references to page numbers in this Order are as reflected in this District's Electronic Case Filing system.

## I. THE DISPUTE

Between 2007 and 2008, Cessna entered into three aircraft lease agreements with Prestige. (Id.) Shortly thereafter, Cessna and Al Ghaith entered into guaranty agreements pertaining to each lease. As to each lease, Al Ghaith, provided a guaranty in duplicate – "one set under Kansas law and another under Dubai law." (Id.)

Each guaranty agreement states that Al Ghaith

> unconditionally and irrevocably guarantees (jointly and severally, if more than one Guarantor) the timely and unconditional payment to [Cessna] (or to its order) of all amounts owed by [Prestige] under the Lease, and further unconditionally guarantees the performance of all of [Prestige's] other obligations under the Lease when due and in strict compliance with each of the terms and conditions thereof.

(Id., Ex. B (Dkt. No. 4-2) (Kansas Guaranty 1) at 2; id., Ex. C (Dkt. No. 4-3) (Dubai Guaranty 1) at 2; id., Ex. D (Dkt. No. 4-4) (Kansas Guaranty 2) at 2; id., Ex. E (Dkt. No. 4-5) (Dubai Guaranty 2) at 2; id., Ex. F (Dkt. No. 4-6) (Kansas Guaranty 3) at 2; id., Ex. G (Dkt. No. 4-7) (Dubai Guaranty 3) at 2) Prestige was "a start-up company with no ability to provide [] security of its own[] for its payment obligations under the Lease Agreements," and the purpose of the guaranty agreements was to "provide [] security on behalf of Prestige." (Id., Ex. A (Dkt. No. 4-1) (Award) at 57)

As to two of the lease agreements, Al Ghaith provided as additional security letters of credit totaling $4,475,000. (Id.)

Each lease agreement and guaranty agreement contains an arbitration provision, in which the parties agreed that any dispute arising out of the agreement would be resolved by the International Chamber of Commerce ("ICC") pursuant to its rules of arbitration, and that any arbitration proceeding would take place in New York. (Id. at 9-10)

In early 2009, Prestige defaulted on its monthly payments to Cessna under the lease agreements, and by December 2009, Prestige stopped make any payments under the leases. (Id. at 20) In January 2010, "Cessna applied Prestige's security deposit to bring the accounts current," and in February 2010, Cessna received one additional payment from Prestige. (Id.) On June 30, 2010, Cessna repossessed all three aircraft, pursuant to Section 14 of the lease agreements. (Id. at 20, 65) After necessary maintenance and repairs, Cessna sold two of the aircraft at above-market value, and sold the third aircraft at about its market value. (Id. at 66)

## II. THE ARBITRATION

On April 15, 2013, Cessna filed a Request for Arbitration with Al Ghaith and Prestige, seeking payment under the guaranty agreements following Prestige's default under the three aircraft lease agreements. (Id. at 8) Shortly thereafter, Cessna sought permission to withdraw its claim against Prestige without prejudice, because it believed that Prestige was defunct. (Id.) Al Ghaith did not object, and the ICC confirmed the withdrawal of the claim against Prestige on October 23, 2013. (Id.)

As to Al Ghaith, that company did not dispute Cessna's allegations regarding "the terms of the Leases; the respective performance or non-performance by the parties to the Leases; [or the] quantum." (Id. at 10-11) Instead, Al Ghaith argued that the ICC lacked jurisdiction because the arbitration provisions in the lease agreements are invalid, and that under Dubai and Kansas law the guaranty agreements are likewise invalid. (Id. at 10)

In contending that the guaranty agreements are unenforceable, Al Ghaith argued that Al Ghaith's Vice Chairman Ghaith Al Ghaith – who signed the guaranty agreements on behalf of Al Ghaith – lacked the authority to do so. (Id. at 24) In support of this argument, Al Ghaith cited to various provisions of UAE law and to its Articles of Association. (Id. at 24-28)

3

Pursuant to the arbitration provisions in the guaranty agreements, Cessna and Al Ghaith each selected an arbitrator, and those two arbitrators then selected a third arbitrator. (Id. at 11)

In a January 23, 2014 letter to the arbitrators, Al Ghaith argued that "no valid arbitration agreement exists due to the lack of corporate authority granted to [Vice Chairman Ghaith Al Ghaith] to enter into an agreement to arbitrate in accordance with the laws of the UAE," and that the "[g]uarantees are ultra vires [as to Al Ghaith] and therefore void for lack of authority." (Id. at 12) On April 16, 2014, the arbitrators denied Al Ghaith's request that the preliminary issue of jurisdiction be heard on a bifurcated basis. (Id. at 12-13)

The arbitration proceeded to a hearing on February 10 and 11, 2015, at the New York International Arbitration Center. (Id. at 14) The arbitrators heard from four fact witnesses and one expert witness. (Id. at 15) Post-hearing briefing was completed on March 24, 2015. (Id. at 16)

## III. THE AWARD

The arbitrators issued their 67-page Award on October 26, 2015. (Id. at 73) The arbitrators concluded that (1) the dispute was within their jurisdiction; (2) Al Ghaith breached the guaranty agreements; (3) Al Ghaith's defenses were not valid; and (4) Al Ghaith was liable for the amounts due under the terms of the lease agreements. (Id. at 71-72)

The arbitrators made a "factual finding that [Al Ghaith] consistently acted as if the Guaranty Agreements were valid and binding," and that accordingly Al Ghaith was "estopped [under Kansas law] from denying the validity of either the Guaranty Agreements or the arbitration agreement[s] contained therein." (Id. at 63) The arbitrators reached the same conclusion under Dubai law:

4

> Under Dubai law, the Tribunal arrives at the same conclusion in respect of the same factual finding in view of the principle of good faith to parties to a contract enshrined at Article 246 of the UAE Civil Code. Pursuant to this principle, if as alleged by [Al Ghaith], [Al Ghaith] discovered the Guaranty Agreements were invalid in 2009, then [Al Ghaith] was bound by the principle of good faith to inform [Cessna], which it never did. The Tribunal is of the view that this duty of good faith applies regardless of whether or not the requirements of [Al Ghaith's] corporate constitution were complied with. It is clearly the case that one cannot hide acts that constitute a breach of good faith behind procedural compliance matters, and certainly not when one was aware of the lack of compliance and stands to benefit from the other party's mistaken understanding. Therefore, the Tribunal finds that the provisions of UAE law invoked by [Al Ghaith] do not absolve the Respondent from its obligation of good faith.

(Id. at 63)

The arbitrators ordered Al Ghaith to pay the deficiency under the three lease agreements, which totals $41,168,134.19. (Id. at 70) This amount includes fees and interest through August 2014. (Id.) The arbitrators also awarded Cessna "interest at the rate of 1.5% per month on the amount owing from September 2014 until the date of payment." (Id. at 72) The arbitrators also held Al Ghaith liable for the costs of the arbitration. (Id. at 71) Because Cessna had paid its share of the costs in advance, the arbitrators ordered Al Ghaith to pay Cessna $530,000 in costs plus interest at a rate of 1.5% per month from the date of the Award until the date of payment. (Id. at 71-2) Finally, the arbitrators ordered Al Ghaith to reimburse Cessna for 75% of its legal fees and other expenses incurred in connection with the arbitration. (Id. at 71) These expenses total $1,503,839.91. (Id.) The arbitrators further awarded Cessna interest on this amount at a rate of 1.5% per month from the date of the Award until the date of payment. (Id. at 71)

On December 17, 2015, Cessna moved to confirm the Award. (Dkt. No. 2) Al Ghaith filed a cross-motion to vacate the award on February 29, 2016, arguing that the arbitrators acted in manifest disregard of the law. (Dkt. No. 22)

# DISCUSSION

## I. LEGAL STANDARD

"Following issuance of an arbitration award, § 9 of the Federal Arbitration Act ('FAA') provides that a party may apply to a district court 'for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in [S]ections 10 and 11 of this title.'" STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC, 648 F.3d 68, 74 (2d Cir. 2011) (quoting 9 U.S.C. § 9).[2] "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." Folkways Music Publishers v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993).

The Second Circuit has explained that,

> [n]ormally, confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court," Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984), and the court "must grant" the award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The arbitrator's rationale for an award need not be explained, and the award should be confirmed "'if a ground for the arbitrator's decision can be inferred from the facts of the case,'" Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir. 1991) (quoting Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1216 (2d Cir. 1972)). Only "a barely colorable justification for the outcome reached" by the arbitrators is necessary to confirm the award. Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union, 954

---

[2] While the FAA authorizes federal courts to vacate an arbitration award, it generally does not provide federal courts with independent grounds for jurisdiction. Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 581-82 (2008) ("As for jurisdiction over controversies touching arbitration, the [FAA] does nothing, being something of an anomaly in the field of federal-court jurisdiction in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis.") (citation and internal quotation marks omitted). This action, however, arises under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (see Pet. (Dkt. No. 2) ¶ 7), and "Title 9 U.S.C. § 203 confers jurisdiction on the district courts of the United States over an action falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards]." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 618 n. 3 (1985). Accordingly, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

F.2d 794, 797 (2d Cir. 1992). A party moving to vacate an arbitration award has
the burden of proof, and the showing required to avoid confirmation is very high.
Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d
9, 12 (2d Cir. 1997).

D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).

Under Section 10 of the FAA, an arbitration award may be vacated where:

(1) . . . the award was procured by corruption, fraud, or undue means;

(2) . . . there was evident partiality or corruption in the arbitrators, or either of them;

(3) . . . the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) . . . the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

"As a 'judicial gloss' on [S]ection 10(a), the Second Circuit recognizes two additional bases for vacatur: where the award is in 'manifest disregard' of the law or of the terms of the parties' agreement." Am. Centennial Ins. Co. v. Global Int'l Reinsurance Co., Ltd., 12 Civ. 1400 (PKC), 2012 WL 2821936, at *7 (S.D.N.Y. July 9, 2012) (citation omitted); see also Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 452 (2d Cir. 2011) ("Under FAA § 10, an arbitrator's award may also be vacated 'where the arbitrator's award is in manifest disregard of the terms of the [parties'] agreement.'" (quoting Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997)); Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 94 (2d Cir. 2008), rev'd on other grounds and remanded, Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662 (2010) ("'[M]anifest disregard,' reconceptualized as a judicial gloss on

7

the specific grounds for vacatur enumerated in [S]ection 10 of the FAA, remains a valid ground for vacating arbitration awards.").[3]

## II. WHETHER THE ARBITRATORS MANIFESTLY DISREGARDED THE LAW

Al Ghaith argues that the Award must be vacated because it "was made with manifest disregard for the applicable law of the United Arab Emirates." (Cross-Pet. (Dkt. No. 22) at 2) According to Al Ghaith – because the arbitrators "chose to disregard [] facts" pertaining to Al Ghaith's good faith in its dealings with Cessna – they "fail[ed] to address or review virtually all of [Al Ghaith's] statutory defenses in the context of [Al Ghaith's] Articles of Association[, which] constituted manifest disregard of applicable law." (Id., (Dkt. No. 22-1) at 10-11)

### A. Applicable Law

It is well established that "[t]he erroneous application of rules of law is not a ground for vacating an arbitrator's award." See Siegel v. Titan Indus. Corp., 779 F.2d 891, 892-93 (2d Cir. 1985) (citing I/S Stavborg v. National Metal Converters, Inc., 500 F.2d 424, 432 (2d Cir. 1974); see also Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir.

---

[3] The Supreme Court has not ruled on whether "manifest disregard" of the law constitutes an independent basis for vacatur. See Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 584-86 (2008) (noting that the Supreme Court has never endorsed "manifest disregard" as a basis for vacatur independent of the grounds listed in § 10 of the FAA); Stolt-Nielsen S.A., 559 U.S. at 672 n.3 ("We do not decide whether 'manifest disregard' survives our decision in [Hall St.] as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth in 9 U.S.C. § 10."). Because the Second Circuit has held that "'manifest disregard' . . . remains a valid ground for vacating arbitration awards," Stolt-Nielsen S.A., 548 F.3d at 94, this Court applies that standard here. While this Court acknowledges that in Henry Schein, Inc. v. Archer and White Sales, Inc., 139 S. Ct. 524, 531 (2019), the Supreme Court held that the FAA does not "contain a 'wholly groundless' exception" to the bases for vacatur set forth in Section 10, the Court did not address "manifest disregard," and this Court concludes that this ground for review remains valid.

2002) ("Given the deference afforded arbitration decisions, this standard requires more than a mistake of law or a clear error in fact finding."); see also Sotheby's Int'l Rlty., Inc. v. Relocation Grp., LLC, 588 F. App'x 64, 65 (2d Cir. 2015) ("Manifest disregard . . . 'is a doctrine of last resort – its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent.'") (quoting Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003)). Rather, "[a]n arbitral award may be vacated for manifest disregard of the law only if a reviewing court find[s] both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004) (emphasis added) (citations and internal quotation marks omitted); see also Sotheby's Int'l Rlty., 588 F. App'x at 65 ("[T]his Court has imposed the following three requirements in order to find that an award was issued in manifest disregard of the law[:] . . . [(1)] the law that was allegedly ignored was clear, . . . [(2)] the arbitrators did in fact err in their application of the law, and [] the outcome reached was erroneous . . . [, and (3)] the arbitrators knew of the law's existence and its applicability to the problem before them"). "In determining an arbitrator's awareness of the law, we impute only knowledge of governing law identified by the parties to the arbitration." Duferco Int'l Steel Trading, 333 F.3d at 390.

The Second Circuit has made clear that "an arbitral panel's refusal or neglect to apply a governing legal principle clearly means more than error or misunderstanding with respect to the law." Wallace, 378 F.3d at 189 (citations and internal quotation marks omitted). "A federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law." Id. at 190. Indeed, all that is necessary for a

9

court to uphold an arbitration award is "'a barely colorable justification'" for the arbitrators' decision. Id. (quoting Banco de Seguros del Estado v. Mutual Marine Office, Inc., 344 F.3d 255, 263 (2d Cir. 2003) (emphasis in original)). "The arbitrator's factual findings and contractual interpretation are not subject to judicial challenge, particularly on our limited review of whether the arbitrator manifestly disregarded the law." Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 214 (2d Cir. 2002).

### B. Analysis

According to Al Ghaith, the arbitrators were made aware of UAE law stating that a private joint stock company's vice chairman does not have the power to bind the company to a contract, absent a grant of specific authority from the company to do so. (Resp. Br. (Dkt. No. 23-1) at 1) Al Ghaith contends that the "ICC Tribunal should have ruled that [Cessna] had failed to demonstrate the validity of the Guaranty Agreements and their arbitration clauses, which in turn had to mean that the panel lacked jurisdiction. Instead, [the] panel simply ignored these facts and rested its decision on the doctrine of good faith." (Id. at 2) As to good faith, Al Ghaith argues that Cessna was "aware of the inadequacy" of the vice chairman's signature on the guaranty agreements, and that the correspondence between Cessna and Al Ghaith shows that the latter acted in good faith. (Id., (Dkt. No. 23) at 6)

As to good faith, however, the arbitrators made factual findings against Al Ghaith, and this Court cannot disturb those findings. While Al Ghaith now argues that Cessna was "aware of the inadequacy" of the vice chairman's signature, the arbitrators explicitly rejected that assertion. The arbitrators found that "Cessna believed that it had obtained from [Al Ghaith] valid Guaranty Agreements since it ultimately provided three aircraft to Prestige relying on both the Guaranty Agreements and the Letters of Credit." (Allegaert Decl., Ex. A (Dkt. No. 4-1) (Award)

10

at 60) The arbitrators further found that "[Al Ghaith], [which] knew that [Cessna] was relying on the Guaranty Agreements in permitting Prestige to lease the aircraft, [] consistently acted as if the Guaranty Agreements were valid and binding despite the fact that the Guaranty Agreements . . . were signed by [Al Ghaith's vice chairman] alone." (Id. at 62) These factual findings "are not subject to judicial challenge," Westerbeke Corp., 304 F.3d at 214, and are dispositive as to whether Al Ghaith acted in good faith.

Moreover, Al Ghaith mischaracterizes the arbitrators' analysis in arguing that they acted in manifest disregard of UAE law. The arbitrators did not ignore UAE law. To the contrary, they explicitly address and apply UAE law.

The arbitrators cite to Article 246 of the UAE Civil Code, which provides that a "contract must be performed in accordance with its contents, and in a manner consistent with the requirements of good faith." (Allegaert Decl., Ex. A (Dkt. No. 4-1) (Award) at 45) The Award further states that "if, as alleged by [Al Ghaith], [Al Ghaith] discovered that the Guaranty Agreements were invalid in 2009, then [Al Ghaith] was bound by the principle of good faith to inform [Cessna]." (Id. at 63) The Award goes on to state that "the provisions of UAE law invoked by [Al Ghaith] do not absolve [Al Ghaith] from its obligation of good faith." (Id.)

In sum, the arbitrators explicitly applied UAE law in reaching their determination, and Al Ghaith has not met its "heavy burden" to demonstrate that the arbitrators acted in manifest disregard of the law. GMS Grp., LLC v. Benderson, 326 F.3d 75, 81 (2d Cir. 2003). Accordingly, Al Ghaith's cross-motion to vacate the Award on grounds of manifest disregard of the law will be denied.

## III. CONFIRMATION OF THE AWARD

As discussed above, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." Florasynth, 750 F.2d at 176. "Only 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." D.H. Blair, 462 F.3d at 110 (quoting Landy Michaels Realty Corp., 954 F.2d at 797).

Here, the Award is fully supported by the record, and thoroughly explained in a 67-page decision. Accordingly, Cessna's motion to confirm the award will be granted.

## CONCLUSION

For the reasons stated above, Petitioner's motion to confirm the arbitration award is granted (Dkt. No. 2), and Respondent's cross-motion to vacate the award is denied (Dkt. No. 22).

The Clerk of the Court is directed to terminate the motions and to close this case.

Dated: New York, New York
May 7, 2019

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge