UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CESSNA FINANCE CORPORATION,

                              Petitioner,

              -against-

AL GHAITH HOLDING COMPANY PJSC,

                              Respondent.

**ORDER**

15 Civ. 9857 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          Respondent Al Ghaith Holding Company PJSC seeks reconsideration of this

Court's May 7, 2019 order (Dkt. No. 39) granting Petitioner Cessna Finance Corporation's

motion to confirm an October 26, 2015 arbitration award. For the reasons set forth below,

Respondent's motion for reconsideration will be denied.

## BACKGROUND

          Petitioner is a Kansas corporation "engaged in the business of leasing and

financing the leasing of aircraft." (Allegaert Decl. (Dkt. No. 4-1), Ex. A (Award) at 7)[1]

Respondent is a private joint stock company organized under United Arab Emirates law, and "is

a holding company with interests in industrial assets, oil and gas, real estate, and hotels." (Id.)

The arbitration award at issue arises out of a contract dispute concerning aircraft lease

agreements between Petitioner and a third party, Prestige Jet Rental LLC, and guaranty

agreements for those leases between Petitioner and Respondent. (Id. at 9) Between 2007 and

2008, Cessna entered into three aircraft lease agreements with Prestige. (Id.) Shortly thereafter,

Cessna and Al Ghaith entered into guaranty agreements pertaining to each lease. (Id.) As to

---

[1] All references to page numbers in this Order are as reflected in this District's Electronic Case
Files system.

each lease, Al Ghaith provided a guaranty in duplicate – "one set under Kansas law and another under Dubai law." (Id.) Each lease agreement and guaranty agreement contains an arbitration provision, in which the parties agree that any dispute arising out of the agreement will be resolved by the International Chamber of Commerce ("ICC") pursuant to its rules of arbitration, and that any arbitration proceeding will take place in New York. (Id. at 9-10)

In early 2009, Prestige defaulted on its monthly payments to Cessna under the lease agreements, and by December 2009, Prestige had stopped making any payments under the leases. (Id. at 20) In January 2010, "Cessna applied Prestige's security deposit to bring the accounts current," and in February 2010, Prestige made one additional monthly payment to Cessna. (Id.) On June 30, 2010, Cessna repossessed all three aircraft, pursuant to Section 14 of the lease agreements. (Id. at 21, 65) After necessary maintenance and repairs, Cessna sold two of the aircraft at above-market value, and sold the third aircraft at about market value. (Id. at 66)

## I. **PROCEDURAL HISTORY**

On April 15, 2013, Cessna filed a Request for Arbitration with Al Ghaith and Prestige, seeking payment under the guaranty agreements following Prestige's default under the three aircraft lease agreements. (Id. at 8) The arbitration hearing took place in February 2015, and the arbitrators issued a 67-page Award on October 26, 2015. (Id. at 14, 73)

In the arbitration proceeding, Al Ghaith did not dispute Cessna's allegations regarding "the terms of the Leases; the respective performance or non-performance by the parties to the Leases; [or the] quantum." (Id. at 10-11) Instead, Al Ghaith argued that the ICC lacked jurisdiction because the arbitration provisions in the lease agreements are invalid, and that under Dubai and Kansas law the guaranty agreements are likewise invalid. (Id. at 10)

In contending that the guaranty agreements are unenforceable, Al Ghaith argued that Al Ghaith's Vice Chairman Ghaith Al Ghaith – who signed the guaranty agreements on behalf of Al Ghaith – lacked the authority to do so. (Id. at 24) In support of this argument, Al Ghaith cited to various provisions of UAE law and to its Articles of Association. (Id. at 24-28)

The arbitrators concluded that (1) the dispute was within their jurisdiction; (2) Al Ghaith breached the guaranty agreements; (3) Al Ghaith's defenses were not valid; and (4) Al Ghaith was liable for the amounts due under the terms of the lease agreements. (Id. at 71-72) The arbitrators made a "factual finding that [Al Ghaith] consistently acted as if the Guaranty Agreements were valid and binding," and that accordingly Al Ghaith was estopped under both Kansas and Dubai law "from denying the validity of either the Guaranty Agreements or the arbitration agreement[s] contained therein." (Id. at 63)

The arbitrators ordered Al Ghaith to pay the deficiency under the three lease agreements, which totals $41,168,134.19. (Id. at 70) This amount includes fees and interest through August 2014. (Id.) The arbitrators also awarded Cessna "interest at the rate of 1.5% per month on the amount owing from September 2014 until the date of payment." (Id. at 72) The arbitrators also held Al Ghaith liable for the costs of the arbitration and ordered Al Ghaith to pay Cessna $530,000 in costs, plus interest at a rate of 1.5% per month from the date of the Award until the date of payment. (Id. at 71-72) Finally, the arbitrators ordered Al Ghaith to reimburse Cessna for 75% of its legal fees and other expenses incurred in connection with the arbitration. (Id. at 71) These expenses total $1,503,839.91. (Id.) The arbitrators awarded Cessna interest on this amount at a rate of 1.5% per month from the date of the Award until the date of payment. (Id.)

On December 17, 2015, Cessna filed a petition to confirm the award. (Pet. (Dkt. No. 2) Al Ghaith filed a cross-petition to vacate the award on February 29, 2016, arguing that the arbitrators acted in manifest disregard of the law. (Cross-Pet. (Dkt. No. 22))

Al Ghaith argued that the award must be vacated because it "was made with manifest disregard for the applicable law of the United Arab Emirates." (Cross-Pet. (Dkt. No. 22) at 2) According to Al Ghaith – because the arbitrators "chose to disregard [] facts" pertaining to Al Ghaith's good faith in its dealings with Cessna – they "fail[ed] to address or review virtually all of [Al Ghaith's] statutory defenses in the context of [Al Ghaith's] Articles of Association[, which] constituted manifest disregard of applicable law." (Id. (Dkt. No. 22-1) at 10-11)

On May 7, 2019, this Court granted Petitioner's motion to confirm the award, and denied Respondent's cross-motion to vacate the award. (May 7, 2019 Order (Dkt. No. 39)) The Court ruled that Al Ghaith "ha[d] not met its 'heavy burden' to demonstrate that the arbitrators acted in manifest disregard of the law." (Id. (citing GMS Grp., LLC v. Benderson, 326 F.3d 75, 81 (2d Cir. 2003)) The Court's reasoning was as follows:

> According to Al Ghaith, the arbitrators were made aware of UAE law stating that a private joint stock company's vice chairman does not have the power to bind the company to a contract, absent a grant of specific authority from the company to do so. (Resp. Br. (Dkt. No. 23-1) at 1) Al Ghaith contends that the "ICC Tribunal should have ruled that [Cessna] had failed to demonstrate the validity of the Guaranty Agreements and their arbitration clauses, which in turn had to mean that the panel lacked jurisdiction. Instead, [the] panel simply ignored these facts and rested its decision on the doctrine of good faith." (Id. at 2) As to good faith, Al Ghaith argues that Cessna was "aware of the inadequacy" of the vice chairman's signature on the guaranty agreements, and that the correspondence between Cessna and Al Ghaith shows that the latter acted in good faith. (Id., (Dkt. No. 23) at 6)
>
> As to good faith, however, the arbitrators made factual findings against Al Ghaith, and this Court cannot disturb those findings. While Al Ghaith now argues that Cessna was "aware of the inadequacy" of the vice chairman's signature, the arbitrators explicitly rejected that assertion. The arbitrators found that "Cessna believed that it had obtained

4

from [Al Ghaith] valid Guaranty Agreements since it ultimately provided three aircraft to Prestige relying on both the Guaranty Agreements and the Letters of Credit." (Allegaert Decl., Ex. A (Dkt. No. 4-1) (Award) at 60) The arbitrators further found that "[Al Ghaith], [which] knew that [Cessna] was relying on the Guaranty Agreements in permitting Prestige to lease the aircraft, [] consistently acted as if the Guaranty Agreements were valid and binding despite the fact that the Guaranty Agreements . . . were signed by [Al Ghaith's vice chairman] alone." (Id. at 62) These factual findings "are not subject to judicial challenge," Westerbeke Corp., 304 F.3d at 214, and are dispositive as to whether Al Ghaith acted in good faith.

Moreover, Al Ghaith mischaracterizes the arbitrators' analysis in arguing that they acted in manifest disregard of UAE law. The arbitrators did not ignore UAE law. To the contrary, they explicitly address and apply UAE law.

The arbitrators cite to Article 246 of the UAE Civil Code, which provides that a "contract must be performed in accordance with its contents, and in a manner consistent with the requirements of good faith." (Allegaert Decl., Ex. A (Dkt. No. 4-1) (Award) at 45) The Award further states that "if, as alleged by [Al Ghaith], [Al Ghaith] discovered that the Guaranty Agreements were invalid in 2009, then [Al Ghaith] was bound by the principle of good faith to inform [Cessna]." (Id. at 63) The Award goes on to state that "the provisions of UAE law invoked by [Al Ghaith] do not absolve [Al Ghaith] from its obligation of good faith." (Id.)

In sum, the arbitrators explicitly applied UAE law in reaching their determination, and Al Ghaith has not met its "heavy burden" to demonstrate that the arbitrators acted in manifest disregard of the law. GMS Grp., LLC v. Benderson, 326 F.3d 75, 81 (2d Cir. 2003). Accordingly, Al Ghaith's cross-motion to vacate the Award on grounds of manifest disregard of the law will be denied.

(May 7, 2019 Order (Dkt. No. 39) at 10-11)

On May 21, 2019, Respondent moved for reconsideration of this Court's May 7, 2019 order confirming the award. (Resp. Mot. (Dkt. No. 41)) In the alternative, Respondent requests that this Court "clarify the basis on which if confirmed the arbitral award to ensure efficacious arbitral review." (Resp. Br. (Dkt. No. 42) at 7)

## DISCUSSION

## I. MOTION FOR RECONSIDERATION STANDARD

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." Liberty Media Corp. v. Vivendi Universal, S.A.,

861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012). "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" RST (2005) Inc. v. Research in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quoting In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation marks omitted)). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." Davidson v. Scully, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001).

"The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478). "To these ends, a request for reconsideration under Rule 6.3 must demonstrate controlling law or factual matters put before the court in its decision on the underlying matter that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." RST (2005) Inc., 597 F. Supp. 2d at 365 (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

"[Local] Rule 6.3 is intended to '"ensure the finality of decisions and to prevent the practice of a losing party . . . plugging the gaps of a lost motion with additional matters."'" Id. (second alteration in original) (quoting S.E.C. v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988))). "A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule

6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment." Id.

## II.   **ANALYSIS**

Al Ghaith argues that (1) "this Court <u>overly</u> deferred to the panel's factual findings" and did not "evaluat[e these findings] for <u>clear error</u>"; and (2) "the [arbitration] panel applied UAE law but in doing so ignored whole other provisions of UAE law." (Resp. Br. (Dkt. No. 42) at 3-5 (emphasis in original))  Neither argument is persuasive.

As to Al Ghaith's argument that this Court gave undue deference to the arbitrators' factual findings, the Second Circuit has stated that an "arbitrator's factual findings and contractual interpretation are not subject to judicial challenge, particularly on our limited review of whether the arbitrator manifestly disregarded the law." <u>Westerbeke Corp. v. Daihatsu Motor Co., Ltd.</u>, 304 F.3d 200, 214 (2d Cir. 2002).

In any event, this Court did not treat the arbitrators' factual findings as a "black box," as Al Ghaith contends.  <u>See</u> Resp. Br. (Dkt. No. 42) at 4.  Instead, this Court found that "the Award is fully supported by the record, and thoroughly explained in a 67-page opinion." (May 7, 2019 Order (Dkt. No. 39) at 12)  The Court discussed the arbitrators' findings regarding the guaranty agreements, and concluded that the arbitrators "explicitly applied UAE law in reaching their determination." (<u>Id.</u> at 10-11)  Accordingly, this Court found that there was at least a "'barely colorable justification for the outcome reached.'" (<u>Id.</u> at 12 (citing <u>D.H. Blair</u>, 462 F.3d at 110 (quoting <u>Landy Michaels Realty Corp.</u>, 954 F.2d at 797)))

Al Ghaith's second argument – that the arbitrators "applied UAE law but in doing so ignored whole other provisions of UAE law" – amounts to nothing more than a claim that the

arbitrators misapplied the law. An error of law is not sufficient to vacate an arbitration award, however:

> It is well established that "[t]he erroneous application of rules of law is not a ground for vacating an arbitrator's award." See Siegel v. Titan Indus. Corp., 779 F.2d 891, 892-93 (2d Cir. 1985) (citing I/S Stavborg v. National Metal Converters, Inc., 500 F.2d 424, 432 (2d Cir. 1974); see also Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir. 2002) ("Given the deference afforded arbitration decisions, this standard requires more than a mistake of law or a clear error in fact finding."); see also Sotheby's Int'l Rlty., Inc. v. Relocation Grp., LLC, 588 F. App'x 64, 65 (2d Cir. 2015) ("Manifest disregard . . . 'is a doctrine of last resort – its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent.'") (quoting Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003)). Rather, "[a]n arbitral award may be vacated for manifest disregard of the law only if a reviewing court find[s] both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004) (emphasis added) (citations and internal quotation marks omitted); see also Sotheby's Int'l Rlty., 588 F. App'x at 65 ("[T]his Court has imposed the following three requirements in order to find that an award was issued in manifest disregard of the law[:] . . . [(1)] the law that was allegedly ignored was clear, . . . [(2)] the arbitrators did in fact err in their application of the law, and [] the outcome reached was erroneous . . . [, and (3)] the arbitrators knew of the law's existence and its applicability to the problem before them"). "In determining an arbitrator's awareness of the law," we impute only knowledge of governing law identified by the parties to the arbitration." Duferco Int'l Steel Trading, 333 F.3d at 390.
>
> The Second Circuit has made clear that "an arbitral panel's refusal or neglect to apply a governing legal principle clearly means more than error or misunderstanding with respect to the law." Wallace, 378 F.3d at 189 (citations and internal quotation marks omitted). "A federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law." Id. at 190. Indeed, all that is necessary for a court to uphold an arbitration award is "'a barely colorable justification'" for the arbitrators' decision. Id. (quoting Banco de Seguros del Estado v. Mutual Marine Office. Inc., 344 F.3d 255, 263 (2d Cir. 2003) (emphasis in original)).

(May 7, 2019 Order (Dkt. No. 39) at 8-9)

As discussed in this Court's May 7, 2019 Order, the arbitrators' decision turned on their factual findings regarding Al Ghaith's lack of good faith. Citing Article 246 of the UAW Civil Code, the arbitrators concluded that Al Ghaith had not met its obligation under UAW law to "'perform[] in accordance with [the] contents [of the contracts at issue], and in a

manner consistent with the requirements of good faith.'" (Id. at 11 (quoting Allegaert Decl., (Ex. A (Dkt. No. 4-1) (Award) at 45)) Al Ghaith did not show in its original petition, and has not shown in its motion for reconsideration, that the arbitrators' findings were erroneous, much less that they acted in "manifest disregard" of the law.

### CONCLUSION

For the reasons stated above, Al Ghaith's motion for reconsideration is denied, and its motion for oral argument is denied as moot. The Clerk of Court is directed to terminate the motions (Dkt. Nos. 41, 44) and to close this case.

Dated: New York, New York
       March 7 , 2020                    SO ORDERED.

                                         Paul G. Gardephe
                                         United States District Judge